**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TANISORN TATIYARATANA, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**AVIS RENT A CAR SYSTEM, LLC, and AVIS BUDGET GROUP, INC.,**<br><br>**Defendants.** | **Civil Action No.: 2:24-cv-9647**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tanisorn Tatiyaratana (collectively, "Plaintiff"), on behalf of himself and all others similarly situated, alleges as and for his Class Action Complaint, the following against Avis Rent A Car System, LLC and Avis Budget Group, Inc. (collectively, "Avis" or "Defendant"). The following allegations are based upon Plaintiff's personal knowledge with respect to himself and his own acts and following his investigation and the investigation of his counsel, and upon information and belief as to all other matters.

## I. INTRODUCTION

1. Avis operates one of the nation's best-known car rental brands, with thousands of locations within and outside of the United States. As part of its rental car operations, Avis collects, maintains, and stores large volumes of Personally Identifiable Information ("PII" or "Private Information") belonging to its customers.

2. Plaintiff brings this class action against Avis on behalf of citizens of all states in the United States for its failure to properly secure and safeguard Plaintiff's and other similarly situated Avis customers' full names, credit card numbers and expiration dates, driver's license information, dates of birth, and phone numbers from third party criminal hackers in August 2024 (the "Class"

and "Class Members"), publicly exposing the highly sensitive information of approximately 300,000 Avis customers ("the Data Breach").

3. As a result of the Data Breach, Plaintiff and Class Members suffered ascertainable losses, including, but not limited to, a diminution in the value of their Private Information, the loss of the benefit of their contractual bargain with Defendant, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

4. Upon information and belief, the means of the Data Breach and potential risk for improper disclosure of Plaintiff's and Class Members' Private Information was known and foreseeable to Defendant. Thus, Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left the Private Information in a dangerous and vulnerable condition.

5. Defendant, and its employees, failed to properly monitor the computer network and systems housing the Private Information.

6. Had Defendant properly monitored its property, it would have discovered the intrusion sooner or been able to wholly prevent it.

7. Exacerbating an already devastating privacy intrusion, Plaintiff's and Class Members' identities are now at a heightened risk of exposure because of Defendant's negligent conduct since the Private Information that Defendant collected and stored is now in the hands of data thieves.

8. Armed with the Private Information accessed in the Data Breach, data thieves have data from Avis to commit a variety of crimes, including credit/debit card fraud, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining

driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

9. As a direct result of the Data Breach, Plaintiff and Class Members are exposed to a heightened and imminent risk of fraud and identity theft, potentially for the rest of their lives. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

10. Plaintiff and Class Members will likely incur out-of-pocket costs for purchasing credit monitoring services, credit freezes, credit reports, and other protective measures to deter and detect identity theft.

11. As a direct and proximate result of the Data Breach and subsequent exposure of their Private Information, Plaintiff and Class Members have suffered, and will continue to suffer, damages and economic losses in the form of lost time needed to take appropriate measures to avoid unauthorized and fraudulent charges, putting alerts on their credit files, and dealing with spam messages and emails received as a result of the Data Breach.

12. Accordingly, Plaintiff brings this action, on behalf of himself and all others similarly situated, against Defendant seeking redress for its unlawful conduct asserting claims for negligence, negligence *per se*, invasion of privacy by intrusion, and unjust enrichment.

## II. PARTIES

13. Plaintiff Tanisorn Tatiyaratana ("Plaintiff Tatiyaratana") is, and at all times mentioned herein was, an individual citizen of the State of Illinois. Plaintiff provided his Private Information to Avis when renting a car from Defendant. Plaintiff received a letter notice from Avis dated September 4, 2024, notifying him that his Private Information was improperly exposed to unauthorized third parties. This Private Information included Plaintiff's name, driver's license number, credit card number and expiration date, date of birth, and phone number.

14. Defendant Avis Rent A Car System, LLC is a Delaware limited liability company with a principal place of business located at 379 Interpace Parkway, Parsippany, New Jersey 07054. Upon information and belief: the sole member of Plaintiff Avis Rent A Car System, LLC is Avis Group Holdings, LLC ("AGH"); AGH is a Delaware limited liability company with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey; the sole member of AGH is Avis Car Rental Group, LLC ("ACRG"); ACRG is a Delaware limited liability company with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey; The sole member of ACRG is Avis Budget Car Rental, LLC ("ABCR"); ABCR is a Delaware limited liability company with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey; the sole member of ABCR is Avis Budget Holdings, LLC ("ABH"); ABH is a Delaware limited liability company with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey; the sole member of ABH was Cendant Finance Holding Company LLC ("CFHC") until its voluntary dissolution in 2018; CFHC was, prior to dissolution, a Delaware limited liability company with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey; and the sole member of CFHC was Avis Budget Group, Inc. ("ABG"); ABG is a Delaware corporation with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey. As a result, Defendant Avis Rent A Car LLC is a citizen of the State of New Jersey. Defendant Avis Budget Group, Inc. is a corporate citizen of the State of New Jersey, with its headquarters at 379 Interpace Parkway, Parsippany, New Jersey 07054. ABG is the parent company of Defendant Avis Rent A Car System LLC.

## III. JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, and there are approximately 300,000 members in the proposed Class, many of whom are citizens of states different from Defendant.

16. This Court has personal jurisdiction over Defendant because Avis (for both Defendants) is headquartered in New Jersey, its principal place of business is in New Jersey, and it regularly conducts business in New Jersey.

17. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in, was directed to, and/or emanated from this District.

## IV. STATEMENT OF FACTS

### *A. The Data Breach*

18. Between August 3, 2024 and August 6, 2024, unauthorized third-party computer hackers accessed one of Avis's business applications in its computer systems and acquired files stored on those systems including Plaintiff's and Class Members' Private Information. The unauthorized third-party computer hackers exfiltrated the Private Information of Plaintiff and Class Members from Avis's computer systems and exposed the Private Information for sale to other cybercriminals.

19. After learning of the Data Breach, Avis allegedly commenced an investigation. That investigation revealed that approximately 300,000 individuals were victims of the cybersecurity incident. The investigation further revealed that information accessed and taken by the hackers includes individual's names, drivers' license numbers, credit card numbers and expiration dates, dates of birth, phone numbers, and other Private Information that Avis collected and maintained.

20. On September 4, 2024, Avis sent out Data Breach notification letters ("Data Breach Notice" or "Notice"), stating the following:

> **What Happened?** We discovered on August 5, 2024, that an unauthorized third party gained access to one of our business applications. After becoming aware of the incident, we immediately took steps to end the unauthorized access, began an investigation with assistance from cybersecurity experts, and alerted the relevant

> authorities. Based on our investigation, we determined that the unauthorized access occurred between August 3, 2024, and August 6, 2024.
>
> **What personal information was involved?** We determined on August 14, 2024, that your personal information was obtained by the unauthorized third party, which included your name and your driver's license, credit card number and expiration date, date of birth, and phone number.

21. Avis's Data Breach Notice was untimely and woefully deficient, failing to provide basic details concerning the Data Breach, including, but not limited to, how unauthorized parties accessed its business applications and computer systems,[1] whether the information was encrypted or otherwise protected, how it learned of the Data Breach, whether the breach was a system-wide breach, whether servers storing information were accessed, and how many individuals were affected by the Data Breach.

22. Given the intentional and criminal nature of the cybersecurity hack, Plaintiff's and Class Members' Private Information is now for sale to criminals on the dark web. There can be little doubt that unauthorized parties have accessed and viewed Plaintiff's and Class Members' unencrypted, unredacted Private Information, including name, driver's license numbers, date of birth, phone number, credit card number information, and more.

### *B. Plaintiff's Experiences Following the Data Breach*

***<u>Plaintiff Tanisorn Tatiyaratana</u>***

23. Plaintiff Tatiyaratana provided his Private Information to Avis in order to use its services.

---

[1] *Avis Notifies Nearly 300,000 Customers of August Data Breach*, SECUREWORLD, https://www.secureworld.io/industry-news/avis-notifies-data-breach (last visited Oct. 6, 2024) ( "Avis' disclosure that the cause of the breach was insider wrongdoing, and their simultaneous reference to a third party, indicates that the perpetrator was either an employee of a business partner or one whose system was compromised by a remote attacker," said Venky Raju, Field CTO at ColorTokens. Regardless, as the attacker already had a foothold in the network, they could access a critical business application and exfiltrate customers' personal information. This results from a flat enterprise network with no compartmentalization of systems.").

24. Plaintiff received a Notice of the Security Incident dated September 4, 2024, sent by Defendant.

25. After receiving the Data Breach Notice, Plaintiff spent time dealing with the consequences of the Data Breach and continues to spend time dealing with the consequences of the Data Breach, including reviewing and monitoring his bank accounts and credit card accounts for fraudulent activity, researching the Data Breach, and researching the freeze of his credit through Experian, TransUnion and Equifax. Plaintiff Tatiyaratana intends to spend additional time and effort taking steps to protect his Private Information in the future. Because of the Data Breach, Plaintiff Tatiyaratana spent valuable time he otherwise would have spent on other obligations.

26. Moreover, Plaintiff Tatiyaratana spent this time at Avis's direction. In the Data Breach Notice that Plaintiff Tatiyaratana received, Avis encouraged Plaintiff to spend time mitigating his losses by "reviewing and monitoring your account statements and credit history for any signs of unauthorized transactions or activity."

27. As a result of the Data Breach, Plaintiff Tatiyaratana has suffered actual damages in the form of lost time, annoyance, interference, and inconvenience as a result of the Data Breach. This is time Mr. Tatiyaratana otherwise would have spent performing other activities, such as his job and/or leisurely activities for the enjoyment of life.

28. In addition, Plaintiff Tatiyaratana has suffered and will continue to suffer emotional distress as a result of the Data Breach, and has increased concerns for the loss of his privacy and the release of his Private Information, which he would not have suffered had Defendant Avis implemented the necessary and proper safeguards to protect its customers' Private Information from theft.

29. The Private Information that was accessed by an unknown actor was the kind of

sensitive information that can be used to commit fraud and identity theft. It was reasonable and foreseeable that Plaintiff Tatiyaratana would take, and continue to take, necessary measures to protect his Private Information.

30. Plaintiff Tatiyaratana has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Avis's possession, is protected and safeguarded from further and future breaches.

31. Plaintiff Tatiyaratana has suffered actual injury in the form of lost time by having to deal with all the consequences of the Data Breach, including reviewing and monitoring his bank accounts, credit card accounts, researching the potential impact of the Data Breach, and implementing a credit freeze through Experian, TransUnion and Equifax, all as a result of his Private Information being exposed in the Data Breach.

***C. Avis Acquires, Collects, and Stores Its Customers' Private Information***

32. Avis acquires, collects, and stores a massive amount of customers' Private Information and other personally identifiable data.

33. As a condition of engaging in rental car services, Avis requires that these customers entrust it with highly confidential Private Information.

34. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Avis assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff and Class Members' Private Information from disclosure.

35. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information, and, as current and former customers, they relied on Avis to keep this information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *D. The Value of Private Information and the Effects of Unauthorized Disclosure*

36. At all relevant times, Defendant was well aware that the Private Information collected from Plaintiff and Class Members is highly sensitive and of significant value to those who would use it for wrongful purposes.

37. Private Information is a valuable commodity to identity thieves. As the Federal Trade Commission ("FTC") recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[2] Indeed, a robust "cyber black market" exists in which criminals openly post stolen Private Information on multiple underground Internet websites, commonly referred to as the dark web.

38. Further, criminals often trade stolen Private Information on the "cyber black-market" for years following a breach. Cybercriminals can post stolen Private Information on the internet, thereby making such information publicly available.

39. Avis knew, or reasonably should have known, the importance of safeguarding customers' Private Information entrusted to it, and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on customers as a result of a breach. Avis failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

### *E. Avis Failed to Comply with FTC Guidelines*

40. Avis was prohibited by the Federal Trade Commission Act ("FTCA") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTCA. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

[2] *What to Know About Identify Theft*, FED. TRADE COMM'N, https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited Oct. 6, 2024).

41. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[3]

42. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[4] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

43. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[5]

44. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. §45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

45. Avis failed to properly implement basic data security practices. Avis's failure to employ reasonable and appropriate measures to protect against unauthorized access to customer's

---

[3] *Start With Security: A Guide for Business*, FED. TRADE COMM'N, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Oct. 6, 2024).

[4] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Oct. 6, 2024).

[5] *See Start With Security: A Guide for Business*, FED. TRADE COMM'N, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Oct. 6, 2024).

Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. §45.

46. Avis was at all times fully aware of its obligation to protect the Private Information of customers because of its dominance in the car rental market. Avis was also aware of the significant repercussions that would result from its failure to do so.

### *F. Cyber Criminals Have and Will Continue to Use Plaintiff's and Class Members' PII for Nefarious Purposes*

47. Plaintiff's and Class Members' highly sensitive PII is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can be used in a variety of ways for criminals to exploit Plaintiff and the Class Members and to profit off their misfortune and stolen information. The cybercriminals' motives for the Data Breach were purely nefarious and malicious in nature: their one goal was to access Avis's systems in order to obtain valuable PII to sell on the dark web.

48. PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.

49. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[6]

50. Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

[6] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info (last visited Oct. 6, 2024).

[7] *Stolen Laptops Lead to Important HIPAA Settlements*, U.S. DEP'T OF HEALTH & HUMAN SERVS. (Apr. 22, 2014), https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to- important-hipaa-settlements.html, *now available at* https://wayback.archive-it.org/3926/20150618190135/http://www.hhs.gov/news/press/2014pres/04/20140422b.html (last visited Oct. 6, 2024).

51. If cyber criminals manage to access financial information and other personally sensitive data – as they did here – there is no limit to the amount of fraud to which Defendant may have exposed the Plaintiff and Class Members.

***G. Plaintiff and Class Members Suffered Damages***

52. The ramifications of Avis's failure to keep customers' Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.

53. In addition to its obligations under state laws and regulations, Defendant owed a common law duty to Plaintiff and Class Members to protect Private Information entrusted to it, including to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized parties.

54. Defendant further owed and breached its duty to Plaintiff and Class Members to implement processes and specifications that would detect a breach of its security systems in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

55. As a direct result of Defendant's intentional, willful, reckless, and negligent conduct which resulted in the Data Breach, unauthorized parties were able to access, acquire, view, publicize, and/or otherwise cause the identity theft and misuse of Plaintiff's and Class Members' Private Information as detailed above, and Plaintiff is now at a heightened risk of identity theft and fraud.

56. The risks associated with identity theft are serious. While some identity theft victims can resolve their problems quickly, others spend hundreds or even thousands of dollars

and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit.

57. Other risks of identity theft include loans opened in the name of the victim, medical services billed in their name, utility bills opened in their name, tax return fraud, and credit card fraud.

58. Plaintiff and Class Members did not receive the full benefit of the bargain for received car rental and other services. Instead, these services were of a diminished value. As a result, Plaintiff was damaged in an amount at least equal to the difference in the value of the car rental with data security protection they paid for and the services they received without the data security protection.

59. As a result of the Data Breach, Plaintiff's and Class Members' Private Information has diminished in value.

60. The Private Information belonging to Plaintiff and Class Members is private, private in nature, and was left inadequately protected by Defendant who did not obtain Plaintiff's or Class Members' consent to disclose such Private Information to any other person as required by applicable law and industry standards.

61. The Data Breach was a direct and proximate result of Defendant's failure to: (a) properly safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' Private Information; and (c) protect against reasonably foreseeable threats to the

security or integrity of such information.

62. Defendant had the resources necessary to prevent the Data Breach, but neglected to adequately implement data security measures, despite its obligation to protect customer data.

63. Had Defendant remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, it would have prevented the intrusions into its systems and, ultimately, the theft of Plaintiff's and Class Members' Private Information.

64. As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives.

65. The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "[r]esolving the problems caused by identity theft [could] take more than a year for some victims."[8]

66. Defendant's failure to adequately protect Plaintiff's and Class Members' Private Information has resulted in Plaintiff and Class Members having to undertake these tasks, which require extensive amounts of time, calls, and, for many of the credit and fraud protection services, payment of money – while Defendant sits by and does nothing to assist those affected by the incident. Instead, as Avis's Data Breach Notice indicates, it is putting the burden on Plaintiff and Class Members to discover possible fraudulent activity and identity theft.

67. As a result of Defendant's failures to prevent the Data Breach, Plaintiff and Class

[8] Erika Harrell, & Lynn Langton, *Victims of Identity Theft, 2012*, U.S. DEP'T OF JUSTICE, BUREAU OF JUSTICE STATISTICS (Dec. 2013), https://bjs.ojp.gov/content/pub/pdf/vit12.pdf (last accessed Oct. 6, 2024).

Members have suffered, will suffer, and are at increased risk of suffering:

i. The compromise, publication, theft and/or unauthorized use of their Private Information;

ii. Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

iii. Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

iv. The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Private Information in its possession;

v. Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and

vi. Anxiety and distress resulting from fear of misuse of their Private Information.

68. In addition to a remedy for the economic harm, Plaintiff and Class Members maintain an undeniable interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

## V. CLASS ALLEGATIONS

69. Plaintiff brings this class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

70. The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> **<u>Nationwide Class</u>: All individuals whose Private Information was compromised in the Avis Data Breach that occurred between August 3, 2024 and August 6, 2024.**

71. The Nationwide Class is herein referred to as the "Class." Excluded from the Class

are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, members, affiliates, officers, and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

72. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

73. Numerosity, Fed R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. Defendant has identified approximately 300,000 customers whose Private Information may have been improperly accessed in the Data Breach whose Private Information was compromised, and the Class is apparently identifiable within Defendant's records.

74. Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

i. Whether and when Defendant actually learned of the Data Breach and whether its response was adequate;

ii. Whether Defendant owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their Private Information;

iii. Whether Defendant breached that duty;

iv. Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' Private Information;

v. Whether Defendant acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class Members' Private Information;

vi. Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' Private Information secure and prevent loss or misuse of that Private Information;

vii. Whether Defendant adequately addressed and fixed the vulnerabilities which

permitted the Data Breach to occur;

viii. Whether Defendant caused Plaintiff's and Class Members' damages;

ix. Whether Defendant violated the law by failing to promptly notify Plaintiff and the Class that their Private Information had been compromised;

x. Whether Plaintiff and the other Class Members are entitled to actual damages, credit monitoring, and other monetary relief; and

xi. Whether Defendant violated common law and statutory claims alleged herein.

75. Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members, because all had their Private Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

76. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect the Class uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

77. Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

78. Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an

appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

79. The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each of the individual Class Members with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

80. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

81. Adequate notice can be given to Class Members directly using information

maintained in Defendant's records.

82. Unless a Class-wide injunction is issued, Plaintiff and Class Members remain at risk that Defendant will continue to fail to properly secure the Private Information of Plaintiff and the Class resulting in another data breach, continue to refuse to provide proper notification to Class Members regarding the Data Breach, and continue to act unlawfully as set forth in this Class Action Complaint.

83. Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

84. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

i. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and safeguarding their Private Information;

ii. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

iii. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

iv. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

v. Whether Class Members are entitled to actual damages, additional credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

**<u>COUNT I</u>**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class )**

85. Plaintiff repeats and realleges paragraphs 1 through 84 set forth above as if they

were fully set forth herein.

86. Defendant Avis owed a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding, securing, and protecting the Private Information in its possession, custody, or control.

87. By collecting and storing this data in its computer system and network, Avis owed a duty of care to use reasonable means to prevent disclosure of customer PII, and to safeguard the information from theft. Avis's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

88. Defendant Avis knew or should have known the risks of collecting and storing Plaintiff's and all other Class Members' Private Information and the importance of maintaining secure systems.

89. Defendant knew or should have known of the many data breaches that have targeted companies that stored PII in recent years.

90. Given the nature of Avis's business, the sensitivity and value of the Private Information it maintains, and the resources at its disposal, Avis should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

91. Avis breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Private Information entrusted to it—including Plaintiff's and Class Members' Private Information.

92. Plaintiff and Class Members had, and have, no ability to protect their Private

Information that was, or remains, in Defendant's possession.

93. It was or should have been reasonably foreseeable to Avis that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' Private Information to unauthorized individuals.

94. But for Avis's negligent conduct or breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Avis's failure to exercise reasonable care in safeguarding, securing, and protecting such Private Information by, *inter alia*, adopting, implementing, and maintaining appropriate security measures.

95. As a result of Avis's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Private Information; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their Private Information which remains in Defendant's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the Private Information compromised as a result of the Data Breach; (vii) overpayment for the services that were received without adequate data security; (viii) loss of privacy from the

unauthorized access and exfiltration of Private Information; and (ix) diminished value of Private Information.

96. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Nationwide Class)**

97. Plaintiff repeats and realleges paragraphs 1 through 84 set forth above as if they were fully set forth herein.

98. Pursuant to the FTCA (15 U.S.C. §45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

99. Defendant breached its duties to Plaintiff and Class Members under the FTCA (15 U.S.C. §45) by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

100. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

101. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

102. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or reasonably should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

103. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and

Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**INVASION OF PRIVACY BY INTRUSION**
**(On Behalf of Plaintiff and the Nationwide Class)**

104. Plaintiff repeats and realleges paragraphs 1 through 84 set forth above as if they were fully set forth herein.

105. Plaintiff and Class Members had a reasonable expectation that Defendant would maintain the privacy of the Private Information collected and maintained by Avis.

106. By failing to keep Plaintiff's and Class Members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's and Class members' privacy by: (i) intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and (ii) publicizing private facts about Plaintiff and Class Members, which is highly offensive to a reasonable person.

107. Defendant failed to protect and safeguard the Private Information entrusted to Avis and in so doing intruded on the private and personal affairs of Plaintiff and Class Members in a manner highly offensive to a reasonable person; invaded the privacy of Plaintiff and Class Members by disclosing, without authorization, the Private Information of Plaintiff and Class Members, inconsistent with the purpose of the collection of the Private Information; failed to provide sufficient security to protect the Private Information of Plaintiff and Class Members from unauthorized access; and enabled, by failing to protect it sufficiently, the disclosure of Private Information without the consent of Plaintiff or Class Members.

108. Avis knew, or acted with reckless disregard in not knowing, that the Private Information collected from Plaintiff and Class Members was, because of its nature, subject to a significant risk of unauthorized access.

109. Avis knew, or acted with reckless disregard in not knowing, that a reasonable

person would consider its failure to adequately protect and secure Plaintiff's and Class Members' Private Information to be highly offensive.

110. Avis's disclosure of Plaintiff and Class Members' Private Information without their consent constituted a violation of the privacy of Plaintiff and Class Members.

111. Avis's failure to provide sufficient security to protect the Private Information of Plaintiff and Class Members, leading to unauthorized access to that data by unauthorized parties constituted the unlawful publication of that Private Information by Avis.

112. The Private Information disclosed in the Avis Data Breach was not generally known to the public and is not a matter of legitimate public concern.

113. Plaintiff and Class Members had a reasonable expectation of the privacy of the Private Information that they provided to their service providers, including Avis. That reasonable expectation was thwarted by Defendant's actions and inactions and Defendant's conduct constituted an invasion of Plaintiff's and Class Members' privacy.

114. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial as well as restitution and injunctive relief.

115. As a direct and proximate consequence of Defendant's invasion of privacy, Plaintiff and Class Members have suffered the injuries alleged above.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

116. Plaintiff repeats and realleges paragraphs 1 through 84 set forth above as if they were fully set forth herein.

117. Plaintiff and Class Members conferred a monetary benefit on Defendant by providing Defendant with their valuable Private Information.

118. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Defendant accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's and Class Members' retained data and used Plaintiff's and Class Members' Private Information for business purposes.

119. Defendant enriched itself by saving the costs it reasonably should have expended on data privacy and security practices and procedures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead increased its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures.

120. Plaintiff and Class Members suffered as a direct and proximate result of Defendant's decision to prioritize its own profit over the requisite security.

121. Under principles of equity and good conscience, Defendant should not be permitted to retain the benefits conferred upon it by Plaintiff and Class Members because Defendant failed to implement (or adequately implement) reasonable data privacy and security practices and procedures that were also mandated by federal, state and local laws, and industry standards.

122. Plaintiff and Class Members have no adequate remedy at law.

123. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (vi) the continued and certainly increased risk to their Private Information, which remains unencrypted and available for unauthorized third parties to access and abuse, and remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as

Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

124. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

125. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by Defendant.

126. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendant traceable to Plaintiff and Class Members.

**PRAYER FOR RELIEF**

A. That the Court certify this action as a class action and certify the Class as proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper Class representative; and appoint Plaintiff's Counsel as Class counsel;

B. That the Court grant permanent injunctive relief to prohibit Avis from engaging in the unlawful acts, omissions, and practices described herein;

C. That the Court award Plaintiff and Members of the Class compensatory, consequential, and general damages in an amount to be determined at trial;

D. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Avis as a result of its unlawful acts, omissions, and practices;

E. That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

F. That Plaintiff be granted the declaratory relief sought herein;

G. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H. That the Court award pre- and post-judgment interest at the maximum legal rate;

and

I. That the Court grant all such other relief as it deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 7, 2024

Respectfully submitted,

**GEORGE FELDMAN MCDONALD, PLLC**

*/s/ Janine L. Pollack*
Janine L. Pollack (NJ Bar No. 041671989)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (917) 983-2707
Facsimile: (888) 421-4173
E-mail: jpollack@4-justice.com
E-Service: eService@4-justice.com

Lori G. Feldman, Esq.*
**GEORGE FELDMAN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
Facsimile: (888) 421-4173
E-mail: lfeldman@4-justice.com
E-Service: eService@4-justice.com

Patrick Yarborough*
**FOSTER YARBOROUGH PLLC**
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
E-Service: patrick@ecf.courtdrive.com

***Attorneys for Plaintiff***
***and the Proposed Class***

****Pro Hac Vice*** Forthcoming